HALL, Judge.
Plaintiff as subrogee of its insured filed suit against defendant-corporation to recover $2,150 it paid to its insured for the loss of his boat, motor, and trailer. Plaintiff alleged that its insured took his newly-purchased bass rig to the defendant to have a canvas cover made for it and that while the rig was in the possession of the defendant it was either lost or stolen through the negligence of defendant or its employees. Defendant denied ever receiving delivery of the boat. After trial, the district court rejected plaintiff’s demands, finding that plaintiff failed to establish that the boat was left at the defendant’s place of business. Plaintiff filed this appeal. We affirm.
Plaintiff’s chief witness at trial was its insured, Dr. Overdyke. He testified that he bought the used boat, motor, and trailer on April 3,1978. In the latter part of April he took the rig to defendant to have a canvas cover made for it. Dr. Overdyke testified that he spoke to someone in charge whose name he could not remember, that the two discussed the cover and the price that would be charged, approximately $60, and an agreement was reached that defendant would make the desired boat cover. Another person, presumably an employee of the defendant, then removed the boat and trailer from the trailer hitch on Overdyke’s car. Dr. Overdyke admitted that he did not get a receipt, invoice or work order from defendant’s employees; nor did he recall leaving his name, address or telephone number. Dr. Overdyke testified that he left his rig with the defendant on a Friday and that he was told that the cover would probably be made on Saturday and could be picked up in the early part of the following week.
Dr. Overdyke returned to defendant’s place of business early in the next week, probably on a Tuesday, and spoke with the same man he had initially spoken with when he took the boat to defendant’s place of business. The boat and trailer could not be located and no one on the premises knew what had happened to it. Dr. Overdyke testified that he and defendant’s employees discussed what should be done and that he, Dr. Overdyke later called the police to report the theft.
A police officer from the Central Records Division was called to testify on behalf of plaintiff. The officer testified that he took a telephone call regarding the theft of the boat and made an offense report of the complaint. According to that report, which was filed into evidence, Dr. Overdyke informed the police that his boat, motor, and trailer were stolen from defendant’s place of business.
Plaintiff’s final witness, offered as an expert in the field of appraising boats, motors, and trailers, estimated the value of the Overdyke boat, motor, trailer, and optional equipment to be $1,700 to $1,800.
Defendant’s president, David Crofton, testified regarding defendant’s job control system and standard operating procedures. Mr. Crofton testified that when a boat or automobile is brought in for a job an invoice or work order is immediately made which describes the work desired. Each invoice includes the name of the person or company who authorizes the work to be done. Invoices covering all the work done by the defendant-corporation in the month of April 1978 were introduced into evidence. There is no invoice for work done for Dr. Overdyke. Mr. Crofton testified he has no record of any work order for a boat cover or anything else for Dr. Overdyke. Defendant’s accountant testified that he reviewed the invoices and his accounting records and found no records or invoices relating to work done for Overdyke in April 1978.
Mr. Crofton also testified that $60, the estimated price which Overdyke testified he was quoted, would not even cover the cost of materials for the described boat cover. Usually a boat cover of this nature would cost approximately $135 to $145. Additionally, defendant’s president stated that his company’s policy is to give a firm price to a person who brings a boat or car in for upholstery work. Once the exact nature of the desired work is determined, a firm price is quoted before the work is begun. Estimates are not given in such situations. Mr. *1192 Crofton also testified that his shop is not open on Saturdays.
Defendant called one of its regular customers who testified that he had been doing business with defendant corporation since 1969. In recent years, since about 1974, he has had no work done by defendant for which an invoice was not made. He is always quoted a firm price for the work he wants done.
Mr. Crofton testified that he did not receive the boat from Dr. Overdyke and did not have knowledge of any work that was to be done for Dr. Overdyke. However, Mr. Crofton does leave the shop on occasion and when he is out his shop foreman, Charles Harper, is in charge.
Plaintiff asserts that the evidence it offered at trial was sufficient to establish the existence of a contract of deposit between its insured and the defendant. A deposit is an act by which a person receives the property of another binding himself to preserve it and return it in kind. LSA-C.C. Art. 2926. The contract of deposit is perfected by the delivery of the thing deposited. LSA-C.C. Art. 2930. “The voluntary deposit takes place by the mutual consent of the person making the deposit and the person receiving it.” LSA-C.C. Art. 2932. Consent is implied when the owner has carried the thing to the depositary and the latter, knowing that the thing had been sent, has not refused to receive it. LSA-C.C. Art. 2933. Once the existence of the deposit and the loss of the property while deposited is established, a presumption is raised that the loss resulted from lack of due care on the depositary’s part and the burden is then on the depositary to exonerate himself from fault. Coe Oil Service, Inc. v. Hair, 283 So.2d 734 (La.1973); Brown & Blackwood v. Ricou-Brewster Building Company, 239 La. 1037, 121 So.2d 70 (1960); Alex W. Rothschild & Company v. Lynch, 157 La. 849, 103 So. 188 (1925). Plaintiff argues on appeal that the defendant presented only circumstantial evidence which was insufficient to rebut the direct testimony which it offered.
Plaintiff argues that the defendant’s evidence did not conclusively prove that the boat was not delivered to defendant’s shop, and emphasizes that defendant did not call all of its employees as witnesses to testify that they knew nothing about the boat.
Plaintiff cannot rely on the weakness of defendant’s evidence because plaintiff failed to offer proof sufficient to establish the existence of a contract of deposit. All agreements or contracts relative to movable property, the value of which exceeds $500, must be proved by at least one credible witness and other corroborating circumstances. LSA-C.C. Art. 2277. In Cormier v. Douet, 219 La. 915, 54 So.2d 177 (1951), the court applied Article 2277 to a contract of deposit.
The trial court in this case held that plaintiff failed to prove by a preponderance of the evidence that the boat was delivered to and received by the defendant. The court in its oral reasons for judgment evaluated the evidence and noted several discrepancies in the testimony.
In Cormier v. Douet, supra, the court stated:
“Since the requirement of Article 2277 R.C.C. is such that it of necessity draws into its legal vortex the sufficiency of proof shown by the record, and since the evidence is correlated with the credibility of the witnesses, the district judge’s conclusions must be accepted, unless they are manifestly erroneous. Barnes v. Le Blanc, 207 La. 989, 22 So.2d 404; Thornton v. Ellington, 209 La. 613, 25 So.2d 282; Meridian Land & Mineral Corporation v. Bagents, 211 La. 627, 628, 30 So.2d 563, and Martin v. Martin, 212 La. 1092, 34 So.2d 329.”
After a thorough review of the record, we find that the conclusion of the trial court is not manifestly erroneous.
Plaintiff failed to establish delivery of the boat to the defendant and the existence of a contract of deposit. The evidence offered by plaintiff did not meet the proof requirements imposed by Article 2277. Plaintiff offered only the testimony of its insured to prove the existence of a contract *1193 of deposit. Nothing was introduced which corroborates this testimony. The police officer called by plaintiff merely testified regarding information that was given to him by the insured. This testimony does not constitute the “other corroborating circumstances” required by Article 2277.
Because the decision of the trial court is not manifestly erroneous and because the evidence as a whole does not satisfy the proof requirements imposed by Article 2277, the judgment rejecting plaintiff’s demands must be affirmed.
For the reasons assigned, the judgment of the trial court is affirmed at plaintiff’s costs.
Affirmed.